IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Auto-Owners Insurance Company, | Case No. 3:10 CV 2455 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Illinois National Insurance Company, | |
| Defendant. | |

## INTRODUCTION

This is a dispute between two insurance carriers over whether a policy covers claims arising from a separate tort suit involving the abuse and neglect of adopted children. Specifically, Plaintiff, Auto-Owners Insurance Company ("Auto-Owners"), seeks to recover the *pro rata* share that it believes Defendant, Illinois National Insurance Company ("Illinois National"), owes for the settlement and defense of claims made against their mutual insured, Adopt America Network, Inc. ("Adopt America"). Illinois National disagrees, contending its policies do not cover Adopt America for the allegations against it in the underlying suit. The parties stipulated to the policies at issue, and to the material facts in this case (Doc. Nos. 26–27). This Court is called upon to interpret Illinois National's policy on dueling Motions for Summary Judgment (Doc. Nos. 30–31).

## BACKGROUND

This coverage dispute arises from a dismantled "professional parenting" operation. Plaintiffs in the underlying lawsuit (the "*Torrence*" suit) allege they were abused and that they suffered emotional and physical harm as a result of being confined in cages and deprived of food by Michael

and Sharon Gravelle, their foster parents (Doc. No. 26 at 1–2). Plaintiffs sought damages against the Gravelles, as well as several other parties involved in their placement, for their neglect and abuse. Adopt America, a defendant in the *Torrence* suit, carried insurance policies issued by both Auto-Owners and Illinois National at different points in time over the period covered by the *Torrence* suit.

The *Torrence* plaintiffs were both adopted in 1998, but Adopt America was not involved in their adoptions. Instead, the claims against Adopt America stem from home inspections in 2002 and/or 2004 incident to other adoptions by the Gravelles. The *Torrence* plaintiffs alleged such inspections should have found, or did find, the deplorable living conditions which they, and other adopted children, suffered (Doc. No. 26 at 3). In the fall of 2005, the Huron County Department of Job & Family Services removed the children from the Gravelles' home after an investigation discovered the use of the cages (Doc. No. 26 at 2).

The Auto-Owners policy insured Adopt America in 2003 and 2004 (Doc. No. 26 at 3). Illinois National issued a consecutive annual policy effective April 11, 2005 through April 11, 2010, which contained two coverage sections relevant in this case: a commercial general liability and professional liability. The professional liability section was provided during the first two annual periods with a retroactive coverage period effective April 11, 2005, providing coverage for any claims arising or made after the retroactive date. Effective April 11, 2007, the Illinois National policy added an "Abuse and Molestation Endorsement" ("Endorsement") amending the commercial general liability coverage as follows (Doc. No. 31-1 at 5) (emphasis in original):

2

> [T]hose amounts that the insured becomes legally obligated to pay as damages for **bodily injury** [or] **mental injury** . . . arising out of:
>
> 1. Any **abuse or molestation incident** arising out of:
>    Negligent:
>    a. Employment;
>    b. Investigation;
>    c. Supervision;
>    d. Reporting to the proper authorities or failure to report; or
>    e. Retention;
>    of a person for whom the insured is or ever was legally responsible.

The Endorsement defines "abuse or molestation incident" to mean "any actual or alleged negligent act, error, or omission resulting in abuse or molestation or threatened abuse or molestation" (Doc. No. 31-1 at 6). The Endorsement also defines "mental injury" to mean "mental anguish or emotional distress" (Doc. No. 31-1 at 6).

Auto-Owners defended Adopt America in the *Torrence* suit, and entered into a settlement agreement with the *Torrence* plaintiffs in exchange for a full and final release. Illinois National denied coverage, declined to provide a defense, and refused to participate in settlement. Auto-Owners now asks this Court to find that Illinois National has a duty to contribute to the *Torrence* payments.

### STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* When considering a motion for summary judgment, this Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, this Court determines only whether the case

3

contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Moreover, the fact both parties have filed cross-Motions for Summary Judgment "'does not mean that the court must grant judgment as a matter of law for one side or the other.'" *Ferro Corp. v. Cookson Group, PLC*, 585 F.3d 946, 949 (6th Cir. 2009) (citing *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991)). Because "'summary judgment in favor of either party is not proper if disputes remain as to material facts . . . the court must evaluate each party's motion on its own merits.'" *Id.*

Further, the interpretation of an insurance contract is a question of law for the courts. *United Nat. Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 450 (6th Cir. 1999). In Ohio, insurance contracts are "construed . . . with the same rules as other written contracts." *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St. 3d 657, 665 (1992). "Courts are required to interpret the contract in such a way as to give effect to the intention of the parties . . . ." *Watkins v. Brown*, 97 Ohio App. 3d 160, 163 (Ohio Ct. App. 1994). Thus, "if the language of the policy's provisions is clear and unambiguous, this Court may not 'resort to construction of that language.'" *Hybud Equip.*, 64 Ohio St. 3d at 665 (quoting *Karabin v. State Auto. Mut. Ins. Co.*, 10 Ohio St. 3d 163, 167 (1984).

Finally, insurers have an "absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy, even in part and even if the allegations are groundless, false or fraudulent." *City of Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St. 3d 186, 189 (2006) (citing *Sanderson v. Ohio Edison Co.*, 69 Ohio St. 3d 582 (1994)). However, insurers "need not defend any action or any claims within the complaint when all the claims are clearly and indisputably outside of the contracted policy coverage." *Id*. (citing

4

*Preferred Risk Co. v. Gill*, 30 Ohio St. 3d 108, 113 (1987)). Similarly, "Courts 'need not stretch the allegations beyond reason to impose a duty on the insurer.'" *Ferro Corp.*, 585 F.3d at 952 (quoting *Motorists Mut. Ins. Co. v. Nat'l Dairy Herd Improvement Ass'n*, 141 Ohio App. 3d 269, 279 (Ohio Ct. App. 2001)). Because of the breadth of the duty to defend, and in spite of the distinction between the two, "there is no obligation to indemnify" in the "absence of a duty to defend." *Id.* at 953 (citations omitted).

## DISCUSSION

The Illinois National policy (No. 06-LX-000398991-4/000) provides coverage from April 11, 2009 to April 11, 2010 (Doc. No. 26 at 3). It is undisputed that the retroactive date for the pertinent provisions of the policy extends coverage back to April 11, 2005 (Doc. No. 30 at 7). The disputed issues are twofold: (1) does the policy provide coverage for the claim, and (2) if so, does the claim fall within the effective date of the policy.

Auto-Owners argues that the Gravelles' abusive and neglectful behavior between April 11, 2005 and the end of 2005, when the children were removed, triggers the Endorsement in the Illinois National policy's commercial general liability (Doc. No. 30 at 7). The Endorsement provides coverage for certain "**abuse or molestation incidents**" arising out of negligent "[i]nvestigation . . . or failure to report . . . of a Person for whom the insured is or ever was legally responsible" (Doc. No. 31-1 at 5).

The *Torrence* plaintiffs alleged that Adopt America's home inspectors negligently inspected the Gravelle home or negligently failed to report the abusive conditions, and such negligence allowed the Gravelles to further abuse their adopted children. Auto-Owners argues such "further abuse" satisfies the Endorsement in the Illinois National policy (Doc. No. 30 at 7–8).

5

The Endorsement definition of an "abuse or molestation incident" is not broad, but is limited to "any actual or alleged negligent act, error, or omission *resulting* in abuse or molestation" (Doc. No. 31-1 at 6) (emphasis added). Thus, the policy does not cover actual abuse -- but does cover the failure to prevent abuse, exactly the allegation in *Torrence* against Adopt America. This then clears the first hurdle.

However, Auto-Owners cannot clear the second hurdle. Adopt America's alleged failure in *Torrence* occurred in the 2002 and/or 2004 home inspections -- well before the policy's effective date in April 2005. Any argument for a continuing violation carrying over into the covered period fails because the *Torrence* complaint only implicates the initial failure to discover or report the abuse. Such failures necessarily predate the 2005 retroactive date. Auto-Owners cannot stretch the *Torrence* complaint far enough to allow for coverage.

Any argument that the professional liability coverage of the Illinois National policy applies in this case fails for the same reasons. That coverage explicitly states "[a]ll claims arising from continuous or related wrongful acts shall be treated as one claim . . . considered to have taken place when the earliest wrongful act takes place" (Doc. No. 31-1 at 8). The claim that Adopt America failed to observe or report the terrible conditions in the Gravelle home relates to an inspection in 2004 -- at the latest; and because this necessarily arose prior to the 2005 effective date of the policy, this claim falls outside the coverage.

Moreover, the professional liability coverage excludes claims arising out of negligent: "[i]nvestigation . . . or failure to report" (Doc. No. 31-1 at 7–8). Unlike the commercial general liability coverage, the professional liability coverage does not include an endorsement which negates

6

the exclusion. For this additional reason, there is no duty to defend under the professional liability coverage.

## CONCLUSION

Because Illinois National has no duty to defend under either the commercial general liability or professional liability coverage, it also has no duty to indemnify. *See Ferro Corp.*, 585 F.3d at 952. Accordingly, Plaintiff Auto-Owner's Motion for Summary Judgment (Doc. No. 30) is denied; and Defendant Illinois National's Motion for Summary Judgment (Doc. No. 31) is granted.

IT IS SO ORDERED.

                                                  s/ *Jack Zouhary*
                                                  JACK ZOUHARY
                                                  U. S. DISTRICT JUDGE

                                                  January 4, 2012